ORIGINAL

SPC:JED
F.# 2007R00394

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

JAMES ALARCON,

          Defendant.

- - - - - - - - - - - - - - - - X

I N F O R M A T I O N

Cr. No. <u>07-454 (RJD)</u>
(T. 18, U.S.C., §§
1832(a)(5) and
3551 et <u>seq.</u>)

THE UNITED STATES ATTORNEY CHARGES:

<u>INTRODUCTION</u>

      At all times relevant to this Information, unless otherwise stated:

      1.   The "Internet" was a global network of computers and other electronic devices that enabled users to communicate with the computers of other users anywhere in the world. Communications over the Internet required the use of computer software programs ("Internet-based software").

      2.  Corporations could obtain financing for their operations by issuing bonds or other securities and selling them to investors. Corporations that issued securities were known as "securities issuers." Some securities issuers sold securities indirectly through investment banks and securities brokerages and with the assistance as well of one or more "clearinghouses." Among other things, clearinghouses electronically recorded

changes in securities ownership as the changes were reported by investment banks and securities brokerages.

     3.    Bondholder Communication Group LLC ("BCG") and its affiliate, Acupay System LLC ("Acupay System") were limited liability corporations established under the laws of the State of New York.  BCG and Acupay maintained and shared offices in Manhattan, New York, and London, England.  Both BCG and Acupay System were in the business of assisting securities issuers to identify and communicate with owners of their securities, including persons who had purchased their securities indirectly.

     4.    The defendant JAMES ALARCON was employed by BCG as a web developer from in or about and between September 30, 2003 and September 16, 2005.

     5.    In or about July 2003, authorities in Spain enacted a law, commonly known as "Law 19/2003."  Law 19/2003 required investors in securities issued by a corporation formed under the laws of Spain (a "Spanish corporation") to identify themselves to the Spanish tax authority promptly upon completing their purchases ("Law 19/2003's Identification Provision"). Law 19/2003 also required that a Spanish corporation withhold at least 15% from any distribution to an investor who failed to comply with Law 19/2003's Identification Provision and pay the withheld amount to the Spanish tax authority ("Law 19/2003's Taxation Provision").

6.    In or about January 2005, Acupay and BCG began developing a fee-based service (the "Acupay Service") to be offered to Spanish corporations seeking to attract investment from persons in the United States, the United Kingdom and other nations.    A principal objective of the Acupay Service was to make it possible for Spanish corporations to comply on behalf of their investors with Law 19/2003's Identification Provision, thereby assuring potential investors in Spanish corporations that distributions to them would not be subject to withholding pursuant to Law 19/2003's Taxation Provision.

7.    The Acupay Service became operational in or about September 2005, when a Spanish corporation used it to issue and sell securities in the United States.    The Acupay Service was delivered by means of Internet-based software ("Acupay Software") that BCG and Acupay had developed and thereafter maintained on a computer network at BCG's offices (the "BCG computer network").

8.    The Acupay Software was designed for collaborative use by Acupay, the securities issuer that hired it and any investment bank, securities brokerage or clearinghouse with whom the securities issuer had arranged to sell its securities and collect information identifying the purchasers of such securities.    The Acupay Software included functions that enabled (a) investment banks and securities brokerages to record, update and transmit to Acupay and a participating clearinghouse the

4

identities of owners of securities and their holdings ("Investor Identity Data"), (b) Acupay and the clearinghouse to receive and verify the Investor Identity Data, and (c) the securities issuer to receive from Acupay verified Investor Identity Data for submission to the Spanish tax authority.

9.    BCG and Acupay created and maintained the Acupay Service and Acupay Software using trade secret information, to wit: financial, business, technical and economic information, including plans and designs, compilations, computer programs and their underlying programming code, methods, techniques, processes and procedures (collectively, the "Acupay Trade Secrets").  BCG and Acupay owned and took reasonable measures to keep the Acupay Trade Secrets confidential, including, among other measures, maintaining the physical security of their premises, restricting access to the Acupay Trade Secrets to employees who needed it in the course of performing their duties and password-protecting portals through which persons could connect to the BCG computer network to use the Acupay Software and view its operations.  The Acupay Trade Secrets derived actual and potential economic value from not being generally known to and not being readily ascertainable through proper means by the public.

The Scheme To Steal Acupay Trade Secrets

10.  From in or about and between January 2006 and
March 2007, both dates being approximate and inclusive, the
defendant JAMES ALARCON, together with two coconspirators known
to the United States Attorney (respectively, "Coconspirator 1"
and "Coconspirator 2"), devised and carried out a scheme to
convert portions of the Acupay Trade Secrets to their own benefit
and to the detriment of Acupay and BCG.

11.  As part of this scheme, Coconspirator 1 and 2
bought from the defendant JAMES ALARCON and he transmitted and
conveyed to them portions of the Acupay Trade Secrets, including
plans and designs, computer programming codes and passwords to
the BCG computer network and to the Acupay Software, which he had
stolen and without authorization appropriated and taken from
Acupay and BCG.

12.  It was a further part of this scheme that without
authorization, Coconspirator 1 and Coconspirator 2 delivered and
conveyed to the defendant JAMES ALARCON other portions of the
Acupay Trade Secrets, including plans and designs that they had
stolen and without authorization appropriated and taken from
Acupay and BCG.

13.  It was a further part of the scheme that the
defendant JAMES ALARCON, Coconspirator 1 and Coconspirator 2
combined the portions of the Acupay Trade Secrets that each had

stolen and without authorization appropriated and taken from
Acupay and BCG to produce Internet-based software that duplicated
functions of the Acupay Software, and that also concealed the
fact that the software was based on computer programming codes
that had been written by Acupay and BCG (the "Duplicated
Software").

14.   It was a further part of the scheme that
Coconspirator 1 and Coconspirator 2 bought the computer
programming code comprising the Duplicated Software from the
defendant JAMES ALARCON, which he transmitted and conveyed to
them by uploading it to an Internet website possessed and
controlled by Coconspirator 1 and Coconspirator 2 (the
"Coconspirators' website").

15.   It was a further part of the scheme that with the
continuing assistance of the defendant JAMES ALARCON,
Coconspirator 1 and Coconspirator 2 solicited actual and
potential clients of Acupay to use the Duplicated Software
instead of the Acupay Software.

<u>Conspiracy To Violate 18 U.S.C. § 1832</u>

16.   The allegations contained in paragraphs 1
through 15 are realleged and incorporated as though fully set
forth in this paragraph.

17.   From in or about and between January 2006 and
March 2007, both dates being approximate and inclusive, within

the Eastern District of New York and elsewhere, the defendant
JAMES ALARCON, together with others, with intent to convert trade
secrets, to wit: the Acupay Trade Secrets, that were related to
and included in a product produced for and placed in interstate
and foreign commerce, to wit: the Acupay Service, to the economic
benefit of persons other than Acupay and BCG, and intending and
knowing that the offense would injure Acupay and BCG, did
knowingly and intentionally conspire:

       a.   To steal and without authorization
appropriate, take, carry away and conceal a trade secret, in
violation of Title 18, United States Code, Section 1832(a)(1);

       b.   Without authorization, to copy, duplicate,
download, upload, alter, replicate, transmit, deliver, send,
communicate and convey a trade secret, in violation of Title 18,
United States Code, Section 1832(a)(2); and

       c.   To receive and possess a trade secret,
knowing the same to have been stolen, appropriated, obtained and
converted without authorization, in violation of Title 18, United
States Code, Section 1832(a)(3).

       18.  In furtherance of the conspiracy and to effect its
objectives, the defendant JAMES ALARCON committed and caused the
commission of the following:

## OVERT ACTS

a.    On or about January 31, 2006, in New York,
New York, the defendant JAMES ALARCON sent Coconspirator 1 an
e-mail that included passwords to two parts of the Acupay
Software operated from the BCG computer network.

b.    On or about February 3, 2006, in Queens, New
York, the defendant JAMES ALARCON remotely accessed the BCG
computer network and downloaded computer programming files that
were part of the Acupay Software.

c.    In or about February 2006, in Manhattan,
New York, the defendant JAMES ALARCON received from
Coconspirator 1 and Coconspirator 2 documents detailing how the
Acupay Service planned to collect, organize and transmit
information identifying securities investors, which ALARCON
transported to his home in Queens, New York.

d.    On or about June 25, 2006, in Staten Island,
New York, the defendant JAMES ALARCON uploaded to the
Coconspirators' website a version of the Duplicated Software that
incorporated edits that Coconspirator 1 and Coconspirator 2 had
requested, including the removal of references to Acupay.

e.    On or about October 2, 2006, in response to
e-mail from Coconspirator 1 advising that the Duplicated Software
was due to be demonstrated to a potential client, but was
malfunctioning, the defendant JAMES ALARCON, in Staten Island,

9

New York uploaded a corrected version of the Duplicated Software
to the Coconspirators' website.

(Title 18, United States Code, Section 1832(a)(5) and
3551 et seq.)

ROSLYNN R. MAUSKOPF
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

No.

# UNITED STATES DISTRICT COURT

Eastern District of New York

Criminal Division

THE UNITED STATES OF AMERICA

vs.

JAMES ALARCON,

Defendant.

# I N F O R M A T I O N

(T. 18, U.S.C., §§ 1832(a)(5) and 3551 et seq.)

Cr. No. 07-454

Filed in open court this

_____ day of

_____ , A.D. 200 ___

Bail, $ _____

_____
Clerk

Jonathan E. Davis, Assistant U.S. Attorney

(718) 254-6298